[650 NYS2d 437]

In the Matter of SENIOR LIFE MANAGEMENT, INC., Respondent,
v MICHAEL J. DOWLING, as Commissioner of Social Services
of the State of New York, Appellant.

Third Department, November 27, 1996

## APPEARANCES OF COUNSEL

*Dennis C. Vacco, Attorney-General,* Albany *(Lew A. Millen-bach* and *Nancy A. Spiegel* of counsel), for appellant.

*Arent, Fox, Kintner, Plotkin & Kahn,* New York City *(Jerome T. Levy* of counsel), for respondent.

## OPINION OF THE COURT

YESAWICH JR., J.

This proceeding involves the interplay of the Federal statutes establishing the Medicare and Medicaid programs *(see,* 42 USC § 1395 *et seq.* [hereinafter the Medicare Act]; § 1396 *et seq.* [hereinafter the Medicaid Act]). At issue is the authority of respondent to deny payment to petitioner, an approved Medicare provider, for certain services furnished to Medicare-eligible persons who, by reason of their poverty, qualify to have these amounts paid by the State, because petitioner does not meet this State's requirements for enrollment as a Medicaid provider. Agreeing, as we do, with Supreme Court, that respondent's refusal to tender the payments at issue is unjustified, we affirm.

Part B of the Federal Medicare program *(see,* 42 USC § 1395j *et seq.)* affords elderly and disabled persons, regardless of income or medical condition, an opportunity to purchase health insurance. Upon payment of the applicable premium (and, in most instances, subject to an annual deductible), the program (with exceptions not relevant here) pays 80% of the "reasonable charge" for covered medical services, including doctors' office visits and other types of outpatient care and treatment *(see,* 42 USC §§ 1395*l*, 1395cc [a] [2] [A]); the covered individual is ordinarily responsible for the remaining 20%, referred to as

"coinsurance". As some Medicare-eligible persons do not have the wherewithal to pay the premiums, deductibles and the 20% coinsurance,* the Federal Government has provided a mechanism whereby States are required to utilize Medicaid funds to "buy in" to the Medicare program for these needy persons, by paying the premiums necessary to obtain part B coverage, as well as the deductibles and coinsurance amounts assessed thereunder. This inures to the State's benefit, for it shifts responsibility for the lion's share of the health care costs incurred by many of these individuals from the Medicaid program, which is funded jointly by the State and Federal Governments, to the Federally funded Medicare program (see, 42 USC §§ 1395v, 1396a [a] [10] [E]; *Rehabilitation Assn. v Kozlowski*, 42 F3d 1444, 1448, *supra*).

Petitioner, a corporation that employs licensed psychologists and clinical social workers, was approved as a Medicare provider in early 1993, and began furnishing mental health services to Medicare beneficiaries, including QMBs, at that time. When petitioner thereafter applied for enrollment as a participating provider in the Medicaid program (see, 18 NYCRR 504.1), however, its application was denied on the ground that two of petitioner's three owners do not hold a professional license (see, 18 NYCRR 504.1 [c]). When its administrative appeal proved unsuccessful, petitioner commenced this CPLR article 78 proceeding seeking an order directing respondent to enroll it as a Medicaid provider, and to process and pay its claims for reimbursement of deductibles and coinsurance amounts for services rendered to QMBs. Although Supreme Court upheld respondent's decision not to enroll petitioner as a Medicaid provider for all purposes, which it found to have been rationally based, it found that respondent's refusal to pay the claims attributable to the Medicare "buy-in" agreement was improper, and directed payment thereof. Respondent appeals from that latter portion of the judgment.

We affirm. As Supreme Court aptly observed, QMBs are considered primarily participants in the Medicare program, not the Medicaid program, and where payment is mandated by

---

* Some of these individuals—called "dual eligibles"—also meet the criteria for full Medicaid eligibility; others, though not meeting the income and asset guidelines necessary to qualify for that need-based program, are nevertheless considered to be without the means to purchase part B coverage on their own. We use the term "QMBs" (qualified Medicare beneficiaries) to encompass both groups (see, 42 USC § 1396d [p]; *Rehabilitation Assn. v Kozlowski*, 42 F3d 1444, 1447).

the former, States cannot utilize their authority under the latter to restrict the circumstances under which it will be made (*see, Rehabilitation Assn. v Kozlowski, supra,* at 1461-1462; *New York City Health & Hosps. Corp. v Perales,* 954 F2d 854, 858-859, *cert denied* 506 US 972). To hold otherwise would result in the establishment of a two-tier health care system for Medicare beneficiaries, whereby those who can afford to pay their own premiums and other charges would be permitted to obtain care from any Federally approved Medicare provider while their poorer counterparts would have fewer providers from which to choose. "[S]uch a result is fundamentally at odds with Congress' vision in enacting the Medicare Act" (*New York City Health & Hosps. Corp. v Perales, supra,* at 859; *cf.,* 42 USC § 1395a). Moreover, by refusing to pay the sums at issue, respondent has breached the terms of the Medicare Act that entitle petitioner, as an approved Medicare provider, to recover 100% of the reasonable charge, as determined by the Secretary of Health and Human Services, for the services it renders pursuant to that program (*see, Pennsylvania Med. Socy. v Snider,* 29 F3d 886, 891).

Respondent's initial contention, that its action is necessitated by the Medicaid Act requirement that a participating State adopt methods and procedures "to safeguard against unnecessary utilization of such care and services and to assure that payments are consistent with efficiency, economy, and quality of care" (42 USC § 1396a [a] [30] [A]), is unconvincing. That prescript, designed to assure that a State exercises appropriate control over the provision of services and payment of claims under its Medicaid plan, is not applicable to the instant situation, which involves the furnishing of services to individuals who, by virtue of the "buy-in" plan, have become participants in the *Medicare* program, and have sought and received care in accordance with the dictates of that program, which is overseen by the Federal Government. That the payments in question are to be made from Medicaid funds does not alter the fact that their purpose is to subsidize the purchase of *Medicare* coverage, not to pay for medical services afforded by the State Medicaid plan (*cf.,* 42 USC § 1396d [p] [3] [payment to be furnished for specified items, including deductibles and coinsurance under Medicare, "without regard to whether the costs incurred were for items and services" covered by Medicaid]). Hence, respondent has neither the obligation nor the authority to monitor the propriety of the claims at issue and, accordingly, cannot rely upon the cited provision to justify its refusal to honor these claims.

Similarly unpersuasive is respondent's argument that petitioner is not entitled to reimbursement, even under the terms of the Medicare Act alone, because it is not "legally authorized" under State law to perform the services of a clinical psychologist or social worker (see, 42 USC § 1395x [s] [2] [M], [N]; [hh] [2]; [ii]). There is no indication that the services for which petitioner seeks reimbursement were not actually "furnished by" persons licensed in the relevant professions pursuant to State law. Respondent's remaining contention—that Supreme Court's judgment must be reversed because it impermissibly interferes with the State's right to regulate the practice of professions—is also meritless. The instant decision in no way impinges upon the State's authority to dictate the conditions under which, and the persons by which, medical care may be administered. Rather, it simply directs that, in the absence of a determination by the Education Department that a provider is, in fact, practicing illegally, payment may not be withheld merely because the entity seeking reimbursement does not qualify as a Medicaid provider.

MIKOLL, J. P., CREW III, WHITE and CASEY, JJ., concur.

Ordered that the judgment is affirmed, with costs.